IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| AMIR HOSSEIN MAHDEJIAN § <br> § <br> *Petitioner*, § <br> § <br> v. § <br> § <br> BRET BRADFORD, *in his official capacity as* § <br> *Field Office Director of the Immigration and* § <br> *Customs Enforcement, Enforcement and Removal* § <br> *Operations, Houston Field Office;* § <br> ALEXANDER SANCHEZ, *in his official* § <br> *capacity as Facility Administrator of IAH Secure* § <br> *Adult Detention Facility;* and § <br> KRISTI NOEM, *in her official capacity as* § <br> *Secretary, U.S. Department of Homeland Security* § <br> § <br> *Respondents*. § | CIVIL ACTION NO. 9:25-CV-00191 <br> JUDGE MICHAEL J. TRUNCALE |

## ORDER GRANTING IN PART EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER

Before the Court is Petitioner Amir Hossein Mahdejian ("Petitioner")'s Emergency Application for a Temporary Restraining Order [Dkt. 2] and Memorandum of Law in Support of Temporary Restraining Order [Dkt. 3] (collectively, "pending motion"). This case was previously before Judge Marcia A. Crone. Petitioner filed the pending motion before Judge Crone on June 27, 2025. [Dkts. 2, 3]. Petitioner filed a supplement to the pending motion on June 30, 2025 [Dkt. 6], and Respondents Bret Bradford, Alexander Sanchez, and Kristi Noem (collectively, "Respondents") filed their Response on the same day. [Dkt. 7].

This matter was transferred to the Lufkin Division, and thus the undersigned, on July 3, 2025. [Dkt. 13].[1] The pending motion is now ripe for review.

For the reasons stated below, the motion is **GRANTED IN PART**.

---

[1] Judge Crone determined that venue was improper in the Beaumont Division, where the case was originally filed.

### I. BACKGROUND

This is an immigration case. *See generally* [Dkt. 1]. Petitioner is an Iranian national whose family fled Iran's fundamentalist regime when he was a young boy. He has resided in this country since 1988; he was four years old at the time. Petitioner identifies as a Protestant Christian. *See* [Dkt. 6 at 5].

In 2011, a U.S. immigration judge ("IJ") ordered Petitioner removed from the United States after a full evidentiary hearing. [Dkt. 1-1 at 2].[2] The IJ concluded that Petitioner was not eligible for asylum due to his failure to file an asylum application within one year of his arrival in the United States (i.e., by 1989). *Id.* However, the IJ withheld his removal to Iran under 8 U.S.C. § 1231(b)(3) because he established it is more likely than not that he would face persecution there. *Id.* The IJ further ordered that the Petitioner "be removed to Germany, and in the alternative, any country other than Iran permitted under section 241 of the Immigration and Nationality Act, as amended [8 U.S.C. § 1231]." *Id.* This was a final order. *Id.*

On February 18, 2025, Immigration and Customs Enforcement ("ICE") issued a directive encouraging the increased use of third-country removals against individuals like the Petitioner, who were granted withholding of removal. On June 23, 2025, the Supreme Court lifted a preliminary injunction issued by the U.S. District Court for the District of Massachusetts that had previously barred the Department of Homeland Security ("DHS") from deporting noncitizens to unspecified third countries without first providing notice and a meaningful opportunity to challenge removal. *See Dep't of Homeland Sec. v. D.V.D.*, No. 24A1153, 2025 WL 1732103 (U.S. June 23, 2025). This Order was issued without explanation, though Justices Sotomayor, Kagan, and Jackson filed dissents. *See id.*

---

[2] Judge Crone held a hearing on the pending motion on June 30, 2025. [Dkt. 10]. In that hearing, Plaintiff's counsel divulged additional facts about what occurred between the Petitioner's arrival to the United States and the IJ's ruling in 2011.

The Petitioner was involved in a motorcycle accident in 2005. He became addicted to codeine shortly thereafter and was eventually convicted for possession of the drug. In 2008, after his release, the Petitioner married a U.S. citizen and applied for adjustment of status to become a permanent resident. However, his application was denied because of his prior drug conviction. Removal proceedings were initiated shortly afterwards.

2

The same day of the Supreme Court's order, ICE agents arrested Petitioner near his home and subsequently transferred him to the IAH Secure Adult Detention Facility in Livingston, Texas, where he remains to this day. Petitioner contends that he has not received notice of the country to which Respondents intend to deport him and he has not been given an opportunity to be heard on his fears of persecution.

Petitioner claims that the list of third countries to which he may be expelled, and to which Respondents have recently been deporting noncitizens, includes Libya, Rwanda, and South Sudan, which are war-torn and rife with human rights violations. [Dkt. 1 at ¶ 45]. Petitioner alleges that, even if Respondents have secured blanket diplomatic assurances from third countries to which they intend to deport noncitizens, these generic commitments are insufficiently individualized, and thus insufficient under controlling statutory, regulatory, and international law. *Id.* at ¶ 46.

The Petitioner filed his petition for writ of habeas corpus on June 27, 2025. [Dkt. 1]. He claims that, by keeping him in the dark on his destination country and depriving him of an opportunity to be heard, Respondents have violated the Immigration Nationality Act ("INA") and regulations implementing the Convention Against Torture ("CAT"). *Id.* at ¶¶ 47–55. He claims further that Respondents have violated the Due Process Clause of the Fifth Amendment, *id.* at ¶¶ 56–58, and that he has been subject to unreasonable detention in violation of 8 U.S.C. § 1231(a)(6). *Id.* at ¶¶ 59–61.

## II.  LEGAL STANDARDS

### a.  Temporary Restraining Order[3]

The standard for obtaining a temporary restraining order is the same as that for obtaining a preliminary injunction. *See Bowling v. Dahlheimer*, No. 4:18-CV-00610-ALM-CAN, 2018 WL 6582826, at *1 (E.D. Tex. Oct. 3, 2018). Indeed, a temporary restraining order has been aptly described

---

[3] Petitioner requests that the Court convert the pending motion into a motion for a preliminary injunction following notice to the Respondents. [Dkt. 3 at 2]. Respondents clearly have notice at this point—they filed a Response to the pending motion. However, the Court opts to leave the pending motion as-is and will not transform its nature. *See Bailey v. Transportation-Commc'n Emp. Union*, 45 F.R.D. 444, 445 (N.D. Miss. 1968) (declining to convert a motion for a temporary restraining order into a motion for a preliminary injunction, though possible, because "the defendant had at most only two days notice" and doing so "would [ ] stretch[ ] the requirements of due process").

3

as "simply a highly accelerated and temporary form of preliminary injunctive relief." *Lee v. Verizon Commc'ns, Inc.*, No. 3:12–CV–4834–D, 2012 WL 6089041, at *1 n.2 (N.D. Tex. Dec. 7, 2012). The plaintiff must establish the following four elements to obtain a temporary restraining order:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the [temporary restraining order] is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the [temporary restraining order] may do to defendant, and (4) that granting the [temporary restraining order] will not disserve the public interest.

*Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).[4] The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the court makes a final decision on injunctive relief.[5] *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

### III.  DISCUSSION

#### a.  Substantial Likelihood of Success on the Merits[6]

The Petitioner has carried his burden on the first element.

Plaintiffs "cannot obtain a [temporary restraining order] if [they] *clearly will not prevail* on the merits; however, that [they are] unable, in an abbreviated proceeding, to prove with certainty eventual success does not foreclose the possibility that temporary restraint may be appropriate." *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975) (emphasis added).

Respondents raise a threshold jurisdiction issue under 8 U.S.C. § 1252(g). [Dkt. 7 at 5–6]. But this does not stand in the way of a temporary restraining order for two reasons. First, it is a cardinal principle that courts have jurisdiction to determine their jurisdiction. *See Lockhart v. El Centro del*

---

[4] Here, since the government is the non-movant, the third and fourth elements fuse. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

[5] As such, it makes sense that TROs are generally not appealable. TROs are "usually effective for only *very brief periods of time*, far less than the time required for an appeal . . . and are then generally supplanted by appealable temporary or permanent injunctions." *Board of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1000 (5th Cir. 1994) (emphasis added).

[6] The Court will not analyze Petitioner's unreasonable detention claim under 8 U.S.C. § 1231(a)(6) since it will not order his release.

*Barrio*, No. 5:23-CV-1156-JKP-ESC, 2025 WL 1161464, at *2 (W.D. Tex. Apr. 21, 2025) (citing *United States v. Ruiz*, 536 U.S. 622, 622 (2002)).

And second, the Court is unsure if this statute applies. Section 1252(g) displaces a district court's power to hear cases "arising from the decision or action . . . to . . . execute removal orders." *See* 8 U.S.C. § 1252(g). Courts of appeal have exclusive jurisdiction to hear petitions requesting "judicial review of an order of removal." *See* 8 U.S.C. §§ 1252(a)(5), (b)(9). But arguably, this case concerns neither "execut[ion]" nor "judicial review" of an order of removal. Rather, it might concern an exercise of authority *outside the scope of* an IJ proceeding (i.e., designating a specific country to which the Petitioner will be removed and whether that act complies with applicable statutes, regulations, and treaties). According to some courts, Congress has not precluded district courts' review of such acts. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1006 (W.D. Wash. 2019) (concluding that claim concerning designation of removal country outside proceedings did not involve review of removal order); *see also Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023) (holding that § 1252(g) insulates only the discretionary decision to commence removal, not related, potentially unlawful acts).

The Petitioner has shown a substantial likelihood of success on the merits of his INA and CAT claims, that is, for the purposes of temporary relief. Under the INA, CAT, and relevant regulations, Respondents have a duty to not remove foreign nationals to countries where their life or freedom could be threatened. Without notice of the proposed country of removal, the Petitioner cannot raise a fear-based claim under the many provisions that seem to enshrine his right to do so. *See, e.g.*, 8 U.S.C. §§ 1231(b), 1225(b)(1)(A)(ii); *see also* 8 C.F.R. § 208.16; 8 C.F.R. § 208.31. In light of the Respondents' nondisclosure, the Petitioner fears that (i) he could be deported to Iran (without the benefit of CAT's procedural safeguards), (ii) he could be deported to a third country that would

ultimately send him to Iran (a process known as "refoulment"), or (iii) he could be deported to and remain in a third country with flagrant human rights abuses.[7]

Likewise, the Petitioner has shown a substantial likelihood of success on the merits of his Fifth Amendment due process claim. Noncitizens have a right to meaningful notice and opportunity to be heard before being deported to a third country. *See, e.g.*, *Aden*, 409 F. Supp. 3d at 1004; *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993); then citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

Respondents argue that the DHS's March 2025 "Guidance Regarding Third Country Removals" provides adequate process. *See* [Dkt. 7-1]. The Court isn't so sure. The guidance creates a two-track system for aliens in Petitioner's position. First, where the United States has received a sufficient assurance[8] from a third country that no aliens will be tortured upon removal there, the Executive may remove the alien to that country without any further process. *Id.* at 1–2. Where the United States has *not* received such an assurance, or where the assurance is uncredible, only then is the alien entitled to notice of the third county and a screening of any asserted fear of torture. *Id.* at 2. But Petitioner argues that this two-track system is an unlawful expedient; due process does not operate in half measures. Petitioner argues further that blanket assurances are no substitute for the individualized inquiries required by the INA, the CAT, and the language of their implementing regulations. Although the Court cannot declare with certainty that this argument is a "winner," neither can it label it a definite "loser." *See Texas*, 518 F.2d at 180.

Lastly, Respondents argue that the Court should dismiss this case in light of a related class action in the District of Massachusetts.[9] *See* [Dkt. 7 at 2]. Respondents admonish that "[t]his Court should decline to wade into an already established process by issuing a potentially conflicting order."

---

[7] Petitioner notes in his supplemental brief that Respondents have put him in "the untenable position of boxing an invisible opponent." [Dkt. 6 at 6]. Although the Petitioner lists possible destination countries with gross violations of human rights, he admits that his fears are difficult to crystallize precisely because of the Respondents' secrecy.

[8] According to the guidance, the Department of State will determine if the assurances are credible or not. [Dkt. 7-1 at 2–3].

[9] The Petitioner is a member of the non-opt out certified class. [Dkt. 7 at 7].

*Id.* at 9. But this is a discretion-laden issue and Respondents don't explain why this should have any bearing on the temporary relief requested. *See Elec. & Gas Tech., Inc. v. Mazurek*, No. CIV.A. 301CV2756G, 2002 WL 1125086, at *7 (N.D. Tex. May 28, 2002) (Fish, C.J.) (citing *West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 728–29 (5th Cir. 1985); then citing *Sutter Corporation v. P & P Industries, Inc.*, 125 F.3d 914, 917 (5th Cir. 1997)).

For these reasons, the Court concludes that the Petitioner has met his burden on the first factor.

### b. Irreparable Harm

The irreparable harm factor likewise weighs in Petitioner's favor.

Here, the threatened harm is clear and simple: persecution, torture, and death. *See Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury."); *see also Beyhaqi v. Noem*, No. CV H-25-1788, 2025 WL 1196003, at *2 (S.D. Tex. Apr. 22, 2025) (concluding that the plaintiff demonstrated irreparable harm when the revocation of his F-1 status created a potential of detention and deportation). Petitioner also references recent deportations to third countries which show that his removal could happen at any moment. *See* [Dkt. 6 at 3 ("In recent months, Respondents have removed or attempted to remove third-country noncitizens to a maximum-security prison in El Salvador and to war-torn countries, such as South Sudan.")]; *see also United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (citation and internal quotation marks omitted) (specifying that a movant must show "more than an unfounded fear").

Respondents retort that Petitioner has not demonstrated irreparable harm because he has only provided naked conclusions:

> Why is Petitioner likely to suffer persecution, torture, or death? Would this take place in every country? Are there specific countries that pose these concerns? Respondents and the Court are left guessing because Petitioner fails to offer any reasonable support for these doomsday hypotheticals.

7

[Dkt. 7 at 14]. But Petitioner anticipated and addressed this very concern. He is only able to provide a generalized list of countries, and threats within them, because the Respondents have left him in the dark about where they intend to send him.

For these reasons, the Court finds that the Petitioner has shown irreparable harm.

### c. Balance of Equities & Public Interest

The balance of equities and the public interest favor the Petitioner. *See Nunez*, 537 F. Supp. at 587 (stating that protecting people who face persecution goes "to the very heart of the principles and moral precepts upon which this country and its constitution were founded"). Conversely, where the government is (purportedly) violating statutory and constitutional rights, it can make no comparable claim to harm from an injunction. *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (stating that there is "generally no public interest in the perpetuation of unlawful agency action"); *see also Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022).

For these reasons, the final fused factor favors the Petitioner.

The Court reiterates that it is not laying down the hammer on any legal issues discussed in this Order. The only holding that can be taken from this Order is that Petitioner has made a sufficient showing to justify preserving the status quo for a deeper inquiry—no more, no less. *See Granny Goose*, 415 U.S. at 439.

### IV.   CONCLUSION

For the reasons stated above, it is **ORDERED** that Petitioner Amir Hossein Mahdejian's Emergency Application for a Temporary Restraining Order [Dkt. 2] is hereby **GRANTED IN PART**.

It is therefore **ORDERED** that the Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are hereby **RESTRAINED** from:

(a) transferring Petitioner out of this judicial district; and

(b) removing Petitioner from the United States without notice and a meaningful opportunity to establish that his life or freedom would be threatened in the third country to which Respondents intend to remove Petitioner.

This Temporary Restraining Order shall remain in effect until **July 17, 2025**. A Preliminary Injunction Hearing will be set for this matter in a separate **ORDER**.

**SIGNED this 3rd day of July, 2025.**

_____
Michael J. Truncale
United States District Judge